UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATT DELANO, MITCHELL GOODSON,
TIM HINEFELT, TOM BANCROFT,
and all other persons similarly situated,

               **Plaintiffs,**

vs.                                      **Case No.: 8:10-CV-320-T-27MAP**

MASTEC, INC. and MASTEC NORTH
AMERICA, INC.,

               **Defendants.**

_____/

## ORDER

    **BEFORE THE COURT** are Defendants MasTec, Inc. and MasTec North America, Inc.'s

Motion to Compel Arbitration and Stay Proceedings (Dkt. 8), Plaintiffs' response (Dkt. 12), and

Defendants' reply (Dkt. 68), which was filed with leave of Court (Dkt. 66). Upon consideration, the

motion is GRANTED in part.

### *Background*

    Defendants MasTec, Inc. and MasTec North America, Inc. (together, "MasTec") are Florida

corporations with their principal place of business in Coral Gables, Florida. (Dkt. 4, ¶¶ 8-9). MasTec

contracts with DirectTV for the installation of satellite dishes, satellite receivers, and related

equipment necessary for receiving satellite signals from DirectTV. (Dkt. 8 at 2). Plaintiffs Matt

Delano, Mitchell Goodson, Tim Hinefelt, and Tom Bancroft ("Plaintiffs") were formerly employed

1

by MasTec as installation and service technicians.[1]  Plaintiffs brought this action on behalf of

themselves and others similarly situated persons pursuant to the Fair Labor Standards Act, 29 U.S.C.

§ 201 *et seq*. (FLSA).

Pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the

"FAA"), Defendants request an order compelling Plaintiffs Goodson and Hinefelt[2] to arbitrate their

claims pursuant to an arbitration provision in a dispute resolution policy ("DRP") in MasTec's

employee handbook and staying this action in its entirety or, alternatively, as to Goodson and

Hinefelt.

Goodson and Hinefelt signed an "employee acknowledgment" stating that they (i) understood

the DRP contained a provision for binding arbitration of designated employment-related disputes,

(ii) agreed to review the DRP immediately, and (iii) acknowledged that they would be bound by the

DRP if they did not affirmatively opt-out by returning a signed form to MasTec's legal department

within 30 days as provided in the DRP.  (Dkt. 8-2).[3]  The DRP requires an employee choosing to opt

out of the DRP to request a form from MasTec's legal department and return the signed form within

thirty days.  (Dkt. 8-1 at 2).  The DRP asserts that an employee choosing to opt out "will not be

---

[1]  Defendants allege that Plaintiffs actually were employed by MasTec Services Company, Inc. ("MasTec Services").  Although Defendants and MasTec Services consent to the substitution of MasTec Services as party Defendant, Dkt. 4 ¶ 1 n.1, no party has moved for substitution.

[2]  In the body of their motion Defendants request an order compelling Plaintiffs Mitchell Goodson and *Tom Bancroft* to arbitrate their claims.  However, the motion states that both Plaintiffs signed acknowledgments of the dispute resolution policy containing the relevant arbitration provision.  The attached acknowledgments (Dkt. 8-2) are executed by Plaintiffs Goodson and *Hinefelt* (not Bancroft).

[3]  Hinefelt and Goodson admit that, during their training, they signed documents they now believe included the employee acknowledgment.  May 25, 2010 Affidavit of Tim Hinefelt (Dkt. 12-1) ¶ 7; May 24, 2010 Affidavit of Mitchell Goodson (Dkt. 12-2) ¶ 7.  However, Hinefelt states that he did not read the documents or know what he was signing, Hinefelt Aff. ¶ 7, and Goodson states that he was told he had to sign the documents "if [he] wanted to work" and the employee acknowledgment "was never reviewed with [him]," Goodson Aff. ¶ 7.

subject to any adverse employment action as a consequence of that decision." *Id.*

The DRP requires binding arbitration of disputes regarding compensation and claims arising under the FLSA. *Id.* at 1. The DPR provides that, in arbitration, "there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative or private attorney general capacity on behalf of a class of persons or the general public." *Id.* The DRP also contains a fee provision that provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under the applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties by the Arbitrator in accordance with said applicable law.

*Id.* at 2.[4]

Finally, the DRP contains a confidentiality provision stating: "Except as may be permitted or required by law, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties." *Id.*

Plaintiffs argue that the arbitration agreement contains three provisions that, at least when considered together, render the arbitration agreement unenforceable: (a) the provision waiving Plaintiffs' right under 29 U.S.C. § 216(b) to pursue their FLSA claims in a collective action (the "class arbitration waiver"); (b) the provision that Defendant will pay the fees of arbitration and the arbitrator where required by law but otherwise the fees will be apportioned by the arbitrator in

---

[4] In a March 26, 2010 email (Dkt. 12-4), counsel for Defendants stated that MasTec would comply with its obligations under this fee provision, which permits the arbitrator to apportion the arbitration and arbitrator's fees in accordance with applicable law, but otherwise would not agree to pay all fees and costs associated with the arbitration. In other words, counsel stated that MasTec will only pay Plaintiffs' portion of the fees if they are required to do so by the arbitrator.

accordance with applicable law (the "costs provision"[5]);  and (c) the provision precluding the parties

from disclosing the existence, content, or result of the arbitration without the consent of other parties

(the "confidentiality provision").

### Discussion

Under the FAA, a written agreement to arbitrate in a contract evidencing a transaction

involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "The FAA thereby places

arbitration agreements on an equal footing with other contracts, and requires courts to enforce them

according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, --- U.S. ---, 130 S. Ct. 2772, 2776

(2010) (internal citations omitted).   "Like other contracts, however, [arbitration agreements] may

be   invalidated   by   'generally   applicable   contract   defenses,   such   as   fraud,   duress,   or

unconscionability.'" *Id.* (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  State

law generally governs whether an enforceable agreement to arbitrate exists.  *See Perry v. Thomas*,

482 U.S. 483, 492 n.9 (1987); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th

Cir. 2005).   The "federal policy favoring arbitration, however, is taken into consideration even in

applying ordinary state law."  *Id.* at 1368 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th

Cir. 2004)).

An agreement to arbitrate federal statutory claims is generally enforceable unless "Congress

has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

---

[5] Plaintiffs describe it as a "fee-splitting" (Dkt. 12 at 2) or "cost-splitting" (Dkt. 12 at 9) provision.  However, in this context, a "cost-splitting" or "fee-splitting" provision is generally an "arrangement by which the parties to an arbitration bear the costs of an arbitration *equally*."  *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 657 n.3 (6th Cir. 2003) (en banc) (emphasis added).  Even if purposefully vague in this respect, as Plaintiffs plausibly contend (Dkt. 12 at 7), this cost provision does not by its terms mandate cost-splitting.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citation and internal quotation marks omitted). Where such a Congressional intention exists, it may be shown by reference to the text of the statute, its legislative history, or "an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Id.*

The burden is on the party opposing arbitration to show that Congress intended to preclude waiver of a judicial forum in favor of an arbitral forum for the statutory claims. *Id.* "An 'inherent conflict' between the policies underlying a federal statute and the enforcement of an agreement to arbitrate claims under that statute does not exist simply because the statute 'is designed not only to address individual grievances, but also to further important social policies . . . [because] so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 817 (11th Cir. 2001) (quoting *Gilmer*, 500 U.S. at 27-28); *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) ("Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration.") (citing *Gilmer*, 500 U.S. at 28).

Plaintiffs do not contend that FLSA claims generally are not arbitrable.[6] Moreover, by itself, Plaintiffs' inability to proceed on a class or collective basis in arbitration does not prevent them from

---

[6] *See Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *4 (M.D. Fla. Aug. 7, 2007) ("The Eleventh Circuit has implicitly approved arbitration of FLSA claims."); *Caley*, 428 F.3d 1359 (affirming district court order compelling arbitration of FLSA overtime and retaliation claims as well as claims under the ADEA, Title VII, and ERISA); *Montes v. Shearson Lehmon Bros., Inc.*, 128 F.3d 1456, 1458 (11th Cir.1997) (rejecting contention that district court erred in referring FLSA claims to arbitration). Other circuits have expressly rejected the contention that FLSA claims cannot be subjected to mandatory arbitration. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297-98 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319-20 (9th Cir.1996); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 823 (8th Cir. 2003) ("The [United States Supreme] Court upheld the arbitrability of federal age discrimination claims in *Gilmer* . . . and the age discrimination statute there at issue had borrowed its remedial provisions from the previously enacted FLSA.") (citing 29 U.S.C. § 626(b)).

vindicating their substantive rights under the FLSA. "The fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition," *Caley*, 428 F.3d at 1378 (quoting *Gilmer*, 500 U.S. at 31), which are "characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims," *id.* (quoting *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004)). In *Gilmer*, the Court rejected the contention that a class action waiver in an arbitration agreement is unenforceable merely because the relevant statute allows for class or collective actions. 500 U.S. at 32. Although dicta,[7] that rejection in not to be lightly cast aside. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997) ("[D]icta from the Supreme Court is not something to be lightly cast aside.").

In *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), the Fifth Circuit applied *Gilmer* in rejecting the argument that the plaintiffs' inability to proceed collectively deprived them of substantive rights under the FLSA. The Fifth Circuit reasoned:

> The Supreme Court rejected similar arguments concerning the ADEA in *Gilmer*, despite the fact that the ADEA, like the FLSA, explicitly provides for class action suits. 500 U.S. at 32. What is more, the provision for class actions in the ADEA *is* the FLSA class action provision, which the ADEA expressly adopts. 29 U.S.C. § 626(b). Accordingly, *Gilmer*'s conclusion in this respect applies with equal force to FLSA claims.

362 F.3d at 298 (emphasis in original).

Similarly, in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002), the Fourth Circuit found "no suggestion in the text, legislative history, or purpose of the FLSA that Congress

---

[7] *See In re American Express Merchants' Litig.*, 554 F.3d 300, 314 (2d Cir. 2009), *vacated and remanded on other grounds sub nom. Am. Express Co. v. Italian Colors Rest.*, --- U.S. ----, 130 S. Ct. 2401 (2010); *cf. Dale v. Comcast Corp.*, 498 F.3d 1216, 1221 n.7 (11th Cir. 2007).

intended to confer a nonwaivable right to a class action under that statute." Accordingly, the court held that the plaintiffs' "inability to bring a class action . . . cannot by itself suffice to defeat the strong congressional preference for an arbitral forum." *Id. See also Horenstein v. Mortgage Market, Inc.*, 9 F. App'x. 618, 619 (9th Cir. 2001).

Furthermore, in *Randolph*, the Eleventh Circuit found no irreconcilable conflict between a class arbitration waiver and the policy goals of another federal statute, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, because (i) the goals of TILA could be vindicated through arbitration, (ii) its provision for statutory damages and attorneys fees provided sufficient incentives to bring TILA claims in arbitration, and (iii) the statute also provided for enforcement by administrative agencies. 244 F.3d at 818 (citing *Johnson v. West Suburban Bank*, 225 F.3d 366, 373-75 (3d Cir. 2000)).[8] In sum, at least as to federal statutes that, like the FLSA,[9] provide for enforcement by administrative agencies, so long as a plaintiff can effectively vindicate his substantive statutory rights through individual arbitration, his inability to proceed collectively or on behalf of a class is generally irrelevant.

Additionally, although decided under Georgia law, the Eleventh Circuit in *Caley* expressly

---

[8] Although *Randolph* has been cited as having established a "rule in favor of enforcing class mechanism bars in arbitration agreements for the Eleventh Circuit," *Kristian v. Comcast Corp.*, 446 F.3d 25, 56 n.19 (1st Cir. 2006), the Eleventh Circuit has since made clear that *Randolph* established no categorical rule, at least as to challenges to class action waivers as unconscionable under state law. Rather, "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." *Dale*, 498 F.3d at 1224. *But cf. Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1140 n.22 (11th Cir. 2010) ("In cases under Georgia law or federal law, this Court has concluded that arbitration agreements precluding class action relief generally are valid and enforceable and not unconscionable.").

[9] The Secretary of Labor administers the FLSA, *see* 29 U.S.C. §§ 204, 211, and is authorized to sue to recover the payment of unpaid minimum wage and overtime compensation, 29 U.S.C. § 216(c), and to restrain violations of the FLSA, 29 U.S.C. § 217. *See also EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) (holding that an employer cannot preclude a public enforcement agency from bringing an enforcement action for employee-specific relief by relying on an employer-employee arbitration agreement).

rejected the contention that a class action waiver was unconscionable in a case involving claims under the FLSA. 428 F.3d at 1378. As noted, the Eleventh Circuit reasoned that the unavailability of class actions was consistent with arbitration's intended simplicity, informality, and expedition. *Id*. More recently, the Eleventh Circuit explained the result in *Caley* as owing in part to the fact that the statutory claims at issue provided for the recovery of attorneys' fees and litigation costs and, as to some of those claims (including the FLSA), automatically entitled a prevailing plaintiff to such fees and costs. *See Dale*, 498 F.3d at 1221-23 & nn.8, 12.[10] As a result, sufficient incentives existed to pursue the claims in arbitration and *Caley* therefore did not involve "a factual scenario in which a remedy was effectively foreclosed because of the negligible amount of recovery when compared to the cost of bringing an arbitration action." *Id*. 498 F.3d at 1221.

An arbitration agreement precluding class arbitration, whether expressly or impliedly,[11] may be unenforceable if it effectively prevents claimants from vindicating their statutory rights in the arbitral forum. *See Gilmer*, 500 U.S. at 27-28. Accordingly, Courts have invalidated class action waivers where plaintiffs demonstrated that their inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all.

For example, in *Dale*, the Eleventh Circuit invalidated a class arbitration waiver as unconscionable under Georgia law where (a) the plaintiffs could not recover attorney's fees except

---

[10] *See also Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) (district court's contention that consumers would likely be unable to obtain legal representation without the class action vehicle was unfounded because under Georgia's RICO Act, the plaintiff could recover attorneys' fees and costs if she prevailed.).

[11] In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, --- U.S. ----, ----, 130 S. Ct. 1758, 1775 (2010), the Supreme Court held in the commercial arbitration context that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party [affirmatively] agreed to do so.") (emphasis in original). *See also* Marc D. Greenbaum and Linda D. Mc Gill, 2 Labor And Employment Arbitration § 45.04[7] ("While it is dangerous to predict the future, *Stott Nielsen* suggests that an agreement's silence on the availability of class wide arbitration is effectively tantamount to a prohibition.").

upon a showing of bad faith or similar misconduct, and the Georgia law allowing such recovery did not "provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff for the claims asserted in *Caley, Jenkins,* and *Randolph,*" and (b) as a result, the minimal potential damages recovery effectively deterred consumers from pursuing their claims individually. 498 F.3d at 1222, 1224. Absent adequate incentives to litigate the claims on an individual basis, the Court concluded that the class action waiver would effectively "allow [defendant] to engage in unchecked market behavior that may be unlawful." *Id.* at 1224.

*Dale* established that relevant circumstances in determining whether class action waivers are enforceable include "the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns." *Id.*

Similarly, in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), relying on unopposed expert evidence regarding the extraordinary complexity and high cost of prosecuting consumer antitrust cases generally and against the defendant in that case specifically, the First Circuit concluded that, absent some form of class mechanism, a consumer antitrust plaintiff would not pursue a claim at all. 446 F.3d at 58. Accordingly, the court invalidated the class arbitration waiver at issue, concluding that the defendant would otherwise be shielded from private consumer antitrust enforcement liability, plaintiffs would be unable to vindicate their statutory rights, and the social goals of federal and state antitrust laws would be frustrated. *Id.* at 61.

9

Here, Plaintiff's FLSA claims appear to be fairly straightforward and Plaintiffs do not argue that their claims will require the kind of extensive expert analysis that was required in *Kristian* or other extraordinary, unrecoverable costs. Moreover, the DRP expressly permits the arbitrator to award fees and costs in accordance with applicable law. The FLSA automatically entitles prevailing plaintiffs to attorney's fees and litigation costs, *see* 29 U.S.C. § 216(b), and these substantive rights apply in arbitration. *See Gilmer*, 500 U.S. at 26 (litigants retain all substantive statutory rights in the arbitral forum).[12]   Given the availability of fees and costs to a prevailing plaintiff under the FLSA, Plaintiffs have not shown that the disparity between their small potential recoveries and their potential costs is so great that their claims could not be effectively prosecuted on an individual basis.

Hinefelt and Goodson contend that arbitrating their claims on an individual basis is prohibitively expensive because of the likely amount of the one cost that has no equivalent in individual lawsuits--the fees of the arbitrator.[13]   An agreement to arbitrate is unenforceable if the cost of arbitration effectively precludes a claimant from vindicating his federal statutory rights in the arbitral forum. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). However, the party seeking to invalidate an arbitration agreement on the ground of prohibitive arbitration costs bears the burden of demonstrating that he is likely to incur such costs. *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003). A showing of the possibility of incurring

---

[12] *See also 14 Penn Plaza LLC v. Pyett*, --- U.S. ---, 129 S. Ct. 1456, 1469 (2009) (an agreement to arbitrate "does not waive the statutory right . . . it waives only the right to seek relief from a court in the first instance."); *see also Adkins*, 303 F.3d at 502 n.1; *Carter*, 362 F.3d at 299 n.1.

[13] *See Morrison*, 317 F.3d at 664 (noting that many litigants in employment cases face minimal costs in litigation because their attorney will cover most of the fees of litigation and advance the expenses incurred in discovery, so that in many employment cases "there is little or no difference between the expenses of the judicial and arbitral fora-with one important exception. In the arbitral forum, the litigant faces an additional expense-the arbitrator's fee and costs-which are never incurred in the judicial forum.").

prohibitive costs is not sufficient. *Id.* The arbitration agreement's silence on the subject of costs is insufficient to render it unenforceable. *Green Tree*, 531 U.S. at 82, 92.[14] Moreover, citing arbitration fees incurred in other cases does not necessarily show that a claimant will incur prohibitive costs. *See id.* at 91 n.6 (brief listing "fees incurred in cases involving other arbitrations as reflected in opinions of other Courts of Appeals" did not afford "a sufficient basis for concluding that [the plaintiff herself] would in fact have incurred substantial costs in the event her claim went to arbitration").

In *Green Tree*, the Supreme Court declined to explain how detailed the showing of prohibitive cost needs be before the burden shifts to the proponent of arbitration to come forward with contrary evidence. 531 U.S. at 92. The Eleventh Circuit has adopted the case-by case approach adopted by the Fourth Circuit in *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001). *See Musnick*, 325 F.3d at 1259. Pursuant to this approach, the court conducts a case-by-case analysis focusing on (1) the plaintiff's ability to pay the arbitration fees and costs, (2) the difference between the expected cost of arbitration and the expected cost of litigation in court to determine "whether the cost differential is so substantial as to deter the bringing of claims." *Bradford*, 238 F.3d at 556. The party seeking to avoid arbitration must offer evidence of (a) the amount of costs he is likely to incur and (b) his inability to pay those costs. *Musnick*, 325 F.3d at 1260.

Here, Hinefelt and Goodson have not demonstrated that they are likely to incur prohibitive

---

[14] In *Paladino*, which preceded *Green Tree*, the Eleventh Circuit concluded that the arbitration agreement at issue was unenforceable in part because it did not require the employer to advance a $2,000 filing fee. 134 F.3d at 1062. However, as the Eleventh Circuit has noted, *Green Tree* "held the opposite; the *absence* of a provision specifying which party must advance the arbitration fees and costs does not render the agreement unenforceable." *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001) (emphasis added), *vacated following settlement*, 294 F.3d 1275 (11th Cir. 2002).

arbitration costs. First, they do not provide an adequate basis for estimating the arbitration costs they are likely to incur. Plaintiffs cite several cases and not particularly relevant opinion evidence estimating arbitrators' fees.[15] However, Plaintiffs present no evidence of fees charged for arbitrating similar employment disputes in central Florida[16] or fees charged by the arbitrator that plaintiffs would propose or request the court to appoint.[17] While the parties have not yet chosen an arbitrator and providing a non-speculative estimate of expected arbitration costs may be difficult, the same was true in *Green Tree*, in which the Supreme Court concluded that an article citing average fees for arbitrators and the respondent's citations to fees referenced in other court decisions were insufficient. *Id.* at 91 n.6.[18]

---

[15] Plaintiffs cite (1) *Parada v. Superior Court*, 98 Cal. Rptr. 3d 743, 765 (Cal. App. 4th Dist. 2009), in which fee schedules for 11 attorney arbitrators and retired judges associated with JAMS showed they charged between $400 and $600 per hour and between $5,500 and $7,000 per day; (2) *Haro v. NCR Corp.*, No. 3-:04-CV-328, 2006 WL 2990386, at *3 (S.D. Ohio Oct. 18, 2006), which cites another case that relies on a third which cites a 1995 study estimating arbitrators' fees of $3,750 to $14,000 for a dispute requiring 15-40 hours of arbitrators' time based on an hourly rate of $250-$350; (3) *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 261-62 (3d Cir. 2003), in which plaintiffs submitted evidence that one prospective arbitrator charged $175.00 per hour or between $800.00 and $1000.00 per day, another arbitrator charge $275.00 per hour, and a third $175.00 per hour or $1000.00 per day; (4) a pre-hearing order in *Da Sila v. Cleannet USA, Inc.*, AAA Case No. 11-1114-001777-08, directing further submissions on the question whether the allocation of fees under the AAA Commercial Rules would interfere with claimants' ability to vindicate their rights in arbitration and directing the parties to assume, for purposes of developing the issue, that the arbitrator's fee "may well exceed $50,000 to address the fees issue, clause construction, and class certification"; and (5) an Oct. 20, 2006 opinion of Miami-based franchise law specialist Robert Zarco submitted in another matter stating that in his experience, the arbitrator's fee "usually exceeds $275 per hour" and reporting his recollection of fees ranging from $100,000 to $400,000 in AAA arbitration proceedings in which Zarco's firm participated on behalf of franchisees against franchisors.

[16] The DRP states that "[t]he location of the arbitration proceeding shall be in the general geographical vicinity of the place where the employee last worked for the company, unless each party to the arbitration agrees in writing otherwise." (Dkt. 8-1 at 1).

[17] The DRP provides for the selection of an arbitrator "by mutual agreement of the parties" or, in the event they cannot agree and upon application by either party, by a court of competent jurisdiction. *Id.*

[18] *See also Bess v. Check Express*, 294 F.3d 1298, 1303-1304 (11th Cir. 2002) (plaintiff failed to demonstrate prohibitive costs where the arbitration agreement did not specify the manner in which arbitration was to be commenced or the manner in which the arbitrator was to be chosen and was silent on the issue of arbitration costs, and the district court's finding that the arbitrator's fee would be at least $150 and would require at least four hours of arbitration time was unsupported by the record. Discussion of potential costs under the American Arbitration Association rules was necessarily speculative because the agreement was ambiguous as whether those rules would apply).

Second, and more important, the arbitration agreement's provision that arbitrator and arbitration fees "will be apportioned between the parties by the Arbitrator in accordance with . . . applicable law" (Dkt. 8-2 at 2) is not informative as to the likely allocation of arbitration fees. Plaintiffs plausibly argue that this language is intentionally vague and that it means in effect that Plaintiffs must pay their share of the arbitration fees upfront, even though the arbitrator may ultimately apportion costs unequally or tax them all against Defendants. The DRP's virtual silence as to the ultimate cost allocation renders Plaintiffs' estimate of likely costs too speculative to sustain their burden under *Green Tree*.

In *Musnick*, the Eleventh Circuit held that the risk that plaintiff would incur prohibitive costs under a "loser-pays" attorneys' fees provision was necessarily speculative in a pre-arbitration judicial proceeding because whether the plaintiff would actually incur attorneys' fees "depend[ed] entirely on whether he prevails in arbitration. If he does, he will incur no fees at all . . . . In this event, obviously, he will not have been deprived of any statutory right or remedy by the mandatory arbitration." *Musnick*, 325 F.3d at 1261. Similarly, Plaintiffs may incur no arbitration costs if they prevail and the award includes the arbitrator's fees. Although this approach, which favors post hoc judicial review of arbitration costs,[19] has been criticized as insufficiently protective of federal statutory rights,[20] this Court is not free to ignore the Eleventh Circuit's guidance in *Musnick*.

Third, as for Goodson, Plaintiffs have not demonstrated his inability to pay. Plaintiffs provide no evidence whatever as to Goodson's financial circumstances. As for Hinefelt, he states

---

[19] *See Musnick*, 325 F.3d at 1261; *Summers v. Dillard's, Inc.*, 351 F.3d 1100, 1101 (11th Cir. 2003).

[20] *See Morrison*, 317 F.3d at 660-63; *cf. James v. McDonald's Corp.*, 417 F.3d 672, 680 n.4 (7th Cir. 2005) ("[Plaintiff] maintains that she cannot afford to pursue arbitration in the first instance. A review of the allocation of costs conducted after the arbitration would be of little help to her.").

that (a) he now earns an annual salary of about $36,000,[21] (b) he, his four young children, and his

wife, who is a "stay-at-home mom," live with his wife's parents, and (c) he has no savings, no

money in the bank, and cannot afford to pay arbitration fees. Dkt. 21-1 ¶¶ 8-9. Although incomplete

as a statement of household assets, income, and expenses,[22] and not as detailed as the evidence the

Eleventh Circuit suggested could suffice in *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d

1024 (11th Cir. 2003),[23] this evidence would likely be sufficient in determining whether Hinefelt

could pay substantial arbitration fees.  Notwithstanding, what the arbitration fees will be and, more

importantly, the likelihood of Hinefelt's incurring them, remain too speculative to render the DRP

unenforceable as to Hinefelt.

Plaintiffs' contention that the arbitration provision is unenforceable under Florida law

requires no extended discussion.  Plaintiffs do not appear to contend that the class action waiver is

unconscionable under Florida law.[24] To the extent they do, their argument is rejected.  To support

---

[21] The amount exceeds the poverty guideline for a family of six. *See Dep't of Health and Human Servs., Update of the HHS Poverty Guidelines for the Remainder of 2010*, 75 Fed.l Reg. 45628-02 (Aug. 3, 2010) ($29,530).

[22] *See Mora v. American Equity Mortg., Inc.*, No. 6:09-cv-637-Orl-31KRS, 2009 WL 1607747, at *2 (M.D. Fla. June 9, 2009) (evidence of the plaintiff's present employment status, hourly rate of compensation, and total net worth did not permit a reasonable estimate of plaintiff's ability to pay arbitration costs where there was "no evidence of Plaintiff's other possible sources of income, assets, total cash on hand in bank or investment accounts, monies received within the last twelve (12) months, or the amounts of Plaintiff's monthly obligations (e.g., mortgage, rental or automobile loan payments, credit card payments, etc.")

[23] In *Anders*, the plaintiff attempted to satisfy his burden of proving prohibitive arbitration costs with an affidavit stating that he could not to pay the $3,500.00 to $6,000.00 that he had determined would be required to arbitrate his claims, and substantiating his inability "by detailing his assets, debts, income, and expenses" and even attaching a copy of his credit report. 346 F.3d at 1028.  This evidence was held insufficient in view of the facts that (a) the applicable arbitration rules provided for a deferral or reduction of administrative fees in cases of extreme hardship, and provided that all fees, including those of the arbitrator, while ordinarily borne equally by the parties, could be assessed by the arbitrator against any party and (b) the defendant agreed to bear the costs of arbitration that the plaintiff could not afford (as determined by the arbitrator). *Id.* at 1029.

[24] *See* Dkt. 12 at 13 n.6.  Plaintiffs state: "Should the Court find it necessary to determine examine [sic] the procedural unconscionability of the [arbitration] agreement, the Plaintiffs would request the opportunity to further develop such evidence."  However, Plaintiffs do not identify even generally the evidence they wish to develop.

a finding of unconscionability, Florida law requires showing of both procedural and substantive unconscionability. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) (citing cases). Plaintiffs make no attempt to demonstrate that the DRP is procedurally unconscionable as to Hinefelt and Goodson.

Instead, Plaintiffs appear to argue that the class action waiver is void under Florida law because it frustrates the remedial purposes of the FLSA. *See Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005) (indicating there are two distinct frameworks under Florida law for determining whether an arbitration clause is unenforceable: "(1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable").

This argument is likewise rejected. Although it is relevant to a state-law unconscionability analysis, *see Kristian*, 446 F.3d at 60 n.22, whether a class arbitration waiver frustrates the purpose of a federal statute is a question of federal law, and, as discussed, Plaintiffs have not shown that enforcing the class arbitration waiver would frustrate the purposes of the FLSA.

Finally, Plaintiffs contend that the DRP's confidentiality provision renders the DRP unenforceable because (a) although facially bilateral, it provides an unfair informational advantage to MasTec by enabling MasTec, as a repeat player in arbitration, to accumulate information about how prior arbitrations against them have fared, the preferences of particular arbitrators, and the force of particular arguments, all of which is unavailable to employee-claimants,[25] and (b) it prevents employees from notifying co-employees of their FLSA rights and allows MasTec to conceal its FLSA violations.

_____

[25] *See, e.g., Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir. 2003).

As to the former contention, the Eleventh Circuit has rejected it in a case involving the FLSA. Noting that, "[i]n many employment claims, both sides might well prefer confidentiality," *Caley*, 428 F.3d at 1378 (citations omitted), the Court held that, although the confidentiality agreement at issue (which precluded the parties from disclosing transcripts from the arbitration or the arbitrator's award) "might be more favorable to employers (as 'repeat players') than to individual employees, it [was] not so offensive as to be invalid," *id.* (citing *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir. 2004) (confidentiality provision in arbitration agreement was not unconscionable under Louisiana law). Although the DRP's confidentiality provision apparently goes further than the confidentiality provision in *Caley*, by forbidding disclosure of the existence of the arbitration proceeding, this does not appear to exacerbate the "repeat player" effect that was insufficient to invalidate the confidentiality provision in *Caley*. Further, that effect appears to be mitigated somewhat by (a) the provision in the DRP allowing for disclosure where permitted by law and (b) other provisions of the DRP contemplating entry of judgment on the arbitration award by a court and allowing civil discovery and motion practice as provided by the forum state's procedural rules. *See* Dkt. 8-1 at 1-2.

The latter argument has considerable force. Some courts have noted that confidentiality agreements in FLSA settlement agreements threaten to frustrate implementation of the "private-public" rights conferred by the FLSA and thwart Congress's intent to promote widespread compliance with the statute. *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010). Arguably, agreements forbidding disclosure of the existence of an FLSA arbitration proceeding threaten similar consequences. However, it is unnecessary to address this point since the Court is not being asked to enforce the confidentiality provision at this time. For present

purposes, the Court finds that the provision does not prevent Plaintiffs from vindicating their FLSA rights in arbitration.

### *Conclusion*

For the foregoing reasons, Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. 8) is **GRANTED** in part. Pursuant to 9 U.S.C. § 3, this action is **STAYED** as to Tim Hinefelt and Mitchell Goodson pending arbitration of their claims. Defendants' request to stay this case as to the other named Plaintiffs is denied.

**DONE AND ORDERED** in chambers this _15th_ day of November, 2010.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

17