UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATT DELANO, MITCHELL GOODSON,
TIM HINEFELT, TOM BANCROFT,
and all other persons similarly situated,

                    Plaintiffs,

vs.                                           Case No. 8:10-CV-320-T-27MAP

MASTEC, INC. and MASTEC NORTH
AMERICA, INC.,

                    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion to Allow Notice to Be Sent to Potential Plaintiffs Informing Them of Their Right to Opt-In to This Case (Dkt. 13), to which Defendants have responded (Dkt. 19). Upon consideration, the motion is DENIED.

### *Background*

Defendants MasTec, Inc. and MasTec North America, Inc. (together, "MasTec") are Florida corporations with their principal place of business in Coral Gables, Florida. (Dkt. 4, ¶¶ 8-9). MasTec contracts with DirectTV for the installation of satellite dishes, satellite receivers, and related equipment necessary for receiving satellite signals from DirectTV. (Dkt. 8 at 2). Plaintiffs Matt Delano and Tom Bancroft[1] were formerly employed by MasTec as satellite installation and service

---

[1] A November 15, 2010 Order (Dkt. 69) granted Defendants' motion to compel arbitration and stayed this case as to Plaintiffs Mitchell Goodson and Tim Hinefelt.

1

technicians.[2] Plaintiffs worked out of MasTec's Sebring, Florida, facility or "garage" (Dkt. 1 ¶¶ 3-6), which employs about 50 technicians (Dkt. 38 ¶ 1).

Plaintiffs present evidence that the head supervisor of the Sebring facility was Daniel Miller, and the regional supervisor for the Sebring and Tampa facilities was Tim Stratton. Dkt. 38 ¶¶ 2-3. Plaintiffs' direct supervisors included Ike Eldridge, Ivan Gonzalez, Russell Plamann, and Damien Saldana. *Id.* ¶ 3; Dkt. 13-20 ¶ 2.

Plaintiffs brought this action on behalf of themselves and other similarly situated persons pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA).

Plaintiffs allege that MasTec technicians are paid on a "piece-rate" basis for the performance of jobs completed and are generally paid no additional amount for time spent (1) traveling to and from each job assignment, (2) obtaining necessary tools and equipment from the Sebring facility; (3) closing out assigned jobs through a central call center; and (4) at job sites at which an installation or service is not completed or the order is cancelled (*e.g.*, because the customer does not show up). Dkt. 1 ¶¶ 14-15.

Plaintiffs further allege that (a) since the end of 2007 or early 2008, MasTec has informed technicians that they may not work more than forty hours per week without authorization, which will ordinarily be denied, and (b) MasTec has an informal practice of informing technicians that, if they report all hours worked and their weekly hours approach forty, they will be given no additional assignments for the week. *Id.* ¶¶ 18-20. Plaintiffs allege that, in this way MasTec encourages technicians to under-report their working hours. *Id.* ¶ 21.

---

[2] Defendants allege that Plaintiffs actually were employed by MasTec Services Company, Inc. ("MasTec Services"). Although Defendants and MasTec Services consent to the substitution of MasTec Services as party Defendant, Dkt. 4 ¶ 1 n.1, no party has moved for substitution.

Plaintiffs allege that MasTec supervisors are aware that technicians work many more than forty hours per week and information demonstrating that fact is readily available to them. *Id.* ¶¶ 21-22.[3] Plaintiffs allege that, despite this knowledge, MasTec has failed to compensate technicians for hours worked in excess of forty per week at one and one-half times their regular rate of pay. *Id.* ¶ 24.

Plaintiffs submit their own declarations and those of Rubin Allen and Darryl Barnes. Each declarant states that he regularly or almost always worked in excess of forty hours per week.[4]

Several declarants similarly assert (or argue) that their supervisors could not have been unaware that they (or they and other technicians) were working more than forty hours per week because the technicians generally reported to work at 7:00 a.m. or earlier and were frequently assigned jobs scheduled between 4:00 and 8:00 p.m., whose completion they reported to a MasTec call center or recorded on a handheld device.[5]

The named Plaintiffs[6] as well as Garcia, Allen, and Barnes have all specifically alleged that

---

[3] The FLSA provides that an employer may not "employ" a covered employee for a workweek longer than forty hours unless the employee receives overtime compensation at a rate not less than one and a half times his regular rate. 29 U.S.C. § 207(a)(1). "A person is employed if he or she is suffered or permitted to work." *Allen v. Board of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 203(g)); *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 533 (S.D. Tex. 2008) ("An employer must compensate employees for all work it suffers or permits."). "The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Department of Conservation and Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11).

[4] *See* Dkt. 13-17 at 1; Dkt. 13-19 ¶ 3; Dkt. 13-20 ¶ 4; Dkt. 13-18 ¶ 2; Dkt. 33 ¶ 4; Dkt. 44-1 ¶ 4. At his deposition, Bancroft added that "everybody was working over 40." Bancroft Dep. at 83:18-25. Similarly, Delano stated that "[p]retty much every . . . technician that works out of the Sebring office works over 40 hours a week." Delano Dep. at 192:11-13.

[5] *See* Dkt. 13-17 at 2; Dkt. 13-19 ¶ 5; Dkt. 13-20 ¶ 4; Dkt. 13-18 ¶¶ 2,4.

[6] Although the Court has ruled that Hinefelt and Goodson must resolve their claims in arbitration, their affidavits may be considered in determining the existence of other technicians similarly situated to Delano and Bancroft.

they worked more than forty hours per week for certain weeks but were not paid overtime for these hours.[7] Additionally, each declarant either expressly states that he was often not paid overtime for hours worked in excess of forty,[8] or implies as much by stating that he under-reported his hours at the direction or encouragement of his supervisors.[9]

Delano and Hinefelt state that unspecified supervisors told them that, if they wanted to work all week, they had to under-report their hours.[10] Allen says that technicians were informed by an unspecified person that "[i]f we wanted to work additional jobs and get paid the piece rate for those jobs . . . we had to put 40 hours on our timesheets even if we worked more than 40 hours in a week." (Dkt. 33 ¶ 6). Goodson was told by unspecified supervisors that he always had to report only forty hours and that he could be disciplined for reporting more.[11] Goodson adds that, if technicians reported more than forty hours on their times sheets, they would receive no additional work for the week, and they would often reach forty hours by Wednesday. (Dkt. 13-18 ¶ 4). Unspecified supervisors told Barnes that he should seek work elsewhere if he wanted to report more than forty hours per week. (Dkt. 44-1 ¶ 5).

Delano states that on several occasions when he reported more than forty hours, his

---

[7] *See* Dkts. 28-1, 30-1, 31-1, & 45-1.

[8] *See* Dkt. 33 ¶ 4; Dkt. 44-1 ¶ 4; *cf.* Dkt. 38 ¶ 6.

[9] Defendants contend (Dkt. 19 at 12) that Bancroft does not state that he under-reported his hours . However, Bancroft states that his supervisors told him to report 40 hours per week, Dkt. 13-20 ¶ 5, and at his deposition, he stated that he was not paid overtime for the majority of his overtime hours or at least not compensated for "a lot" of jobs. Bancroft Dep. at 80:1-81:17.

[10] *See* Dkt. 38 ¶ 4 (supervisors told Delano that if he wanted to work a six-day week, he would have to report only 40 hours); Dkt. 13-19 ¶ 4 (on several occasions, unspecified supervisors told Hinefelt to "take care of [his] time sheets" and informed him that, if he wanted to work all week, he had to "adjust [his] time sheets" to ensure he reported only 40 hours).

[11] *See* Dkt. 13-18 ¶ 5; *cf.* Dkt. 13-20 ¶ 5.

supervisor changed his time card to reflect that he worked only 40 hours. (Dkt 38 ¶ 4 ). Delano adds that on other occasions, supervisors including Miller, Eldridge, and Saldana told to him change his time sheet to reflect only 40 hours. *Id.* Similarly, Allen and Barnes state that unspecified supervisors directed them to alter their time sheets to reflect only forty hours.[12] During his first week of employment, Hinefelt received an oral warning from an unspecified supervisor for accurately reporting that he had worked eighty hours and, as a result, he changed the time sheet and began under-reporting his hours. (Dkt. 13-19 ¶ 6).

Plaintiffs also present evidence that upper management enforced a forty-hour reporting policy. Delano states that at a meeting with Miller and Stratton around May, 2009, after Delano complained that he was working more than forty hours and not being paid overtime, Stratton said that if he wanted to work a six-day work week, Delano "knew what [he] had to do" with his time sheet. (Dkt. 38 ¶ 6).

Defendants respond with evidence that MasTec has policies intended to ensure that technicians were correctly paid for all compensable working time. MasTec provides employees with guidelines ("the guidelines" [Dkt. 19-1 at 2]) defining compensable working time and with a "Question and Answer" fact sheet (the "fact sheet" [*id.* at 4-5]) that answers frequently asked questions regarding compensable working time and provides a telephone number (the "hotline") for anonymously reporting any instruction to under-report working time.

Additionally, the time sheets on which employees are required to record their working time (Dkt. 19-1 at 7) include a daily time record certification stating, *inter alia*, that (1) the employee has recorded all his compensable working time; (2) the employee understands he must obtain his

---

[12] Dkt. 33 ¶ 5; Dkt. 44-1 ¶ 5.

supervisor's permission to work more than forty hours per week and that, if he works overtime without permission, he will be paid for the time but may be subject to discipline up to and including termination; (3) the employee has not been directed by any manager or supervisor to under-report his hours; and (4) the employee understands he can use the hotline to anonymously report any improper instruction to under-report his working time.

All four named Plaintiffs acknowledged receiving and reviewing the guidelines and the fact sheet (Dkt. 19-2), and they as well as Allen, Barnes, and other technicians used time sheets containing the daily time certification.[13] Moreover, Barnes and Allen were opt-in plaintiffs in *Stahl v. MasTec, Inc.*, No. 8:05-cv-1265-T27TGW (M.D. Fla.), *see* Dkt. 33 ¶ 3; Dkt. 44-1 ¶ 3, and pursuant to the settlement agreement in *Stahl* they executed claims forms (Dkt. 62-1 § II; Dkt. 47 § II) stating that they agreed (a) to comply with MasTec's payroll reporting policies and accurately report all working time; (b) to immediately report any instruction by anyone to work off-the-clock or otherwise under-report any working time; and (c) not to perform any off-the-clock work.

Defendants have also submitted unsworn copies of electronic payroll records and time sheets reflecting that each named Plaintiff reported some overtime hours during certain periods and received overtime pay for those hours.[14]

Plaintiffs seek an order authorizing notice of this action to be sent to "similarly situated persons who have worked as Direct TV installation and repair technicians for [MasTec] within the State of Florida since on or about February 5, 2007." (Dkt. 13 at 1). Said differently, Plaintiffs seek

---

[13] *See* Dkts. 36-2, 36-4, 36-6, 36-8; Dkt. 62-2 at 1 ¶ 4, 2-3; Dkt. 46-2 at 1 ¶ 4, 2-3. MasTec's Director of Human Resources for Advanced Technologies, the MasTec service line responsible for employing satellite service technicians, states that she has reviewed all Complaints received since October 2007 and she has no knowledge of complaints made by Allen (Dkt. 46-4 at 1 ¶ 4) or Barnes (Dk. 62-3 ¶ 4).

[14] *See* Dkts. 36-1, 36-2, 36-3, 36-4, 36-5, 36-6, 36-7, 36-8.

"conditional certification" of a putative class comprising those technicians.[15]

Defendants argue that conditional certification is inappropriate because (1) the proposed class includes many technicians who already received notice of virtually identical claims as part of the settlement in *Stahl*; (2) Delano and Bancroft are not similarly situated to the many current and former potential opt-ins whose claims are subject to mandatory arbitration; (3) Plaintiffs provide no evidence that other similarly situated technicians wish to join this lawsuit; and (4) given MasTec's policies and procedures requiring employees to accurately report their hours, Plaintiffs' allegations that they failed to do so will require individualized inquiry and thus are not appropriate for adjudication on a class-wide basis.

### *Standard*

An FLSA action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). District courts in the Eleventh Circuit generally utilize a two-tiered approach in making collective action certification determinations under the FLSA:

---

[15] In *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008), the Eleventh Circuit noted that the decision whether to approve notice to similarly situated employees "is also referred to as conditional certification," and stated that district courts "should treat the initial decision to certify and the decision to notify potential collective action members as synonymous," *id.* at 1261 n.40. "Conditional certification" is something of a misnomer because similarly situated employees do not become parties unless and until they affirmatively opt in to a collective action lawsuit under the FLSA. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Morgan*, 551 F.3d at 1259 ("Because similarly situated employees must affirmatively opt into the litigation, the decision to certify the action, on its own, does not create a class of plaintiffs.").

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).

At the notice stage, the court must determine whether: 1) there are other employees who desire to opt in to the action; and 2) the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Although this determination is made using a fairly lenient standard, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotation marks and citation omitted). Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach*, 942 F.2d at 1567-68.

### Discussion

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Evidence of similarly situated employees who desire to opt in

may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004).

A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Haynes*, 696 F.2d at 887); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003). Notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie,* 276 F. Supp. 2d at 1220 (citing *Dybach*, 942 F.2d at 1567-68) (emphasis added). Rather, a showing that others desire to opt in is required before certification and notice will be authorized. *Id.*

Although Plaintiffs' burden at the notice stage is not heavy, it is not "invisible." *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006). Accordingly, "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at * 2 (M.D. Fla. Aug. 21, 2008) (collecting cases).

The declarations submitted by Plaintiffs are silent as to other technicians interested in joining this lawsuit. However, as to the Sebring facility, Plaintiffs have identified one technician, Travis

Garcia,[16] who wishes to opt in to this lawsuit. As to the Tampa facility, Plaintiffs have identified two: Rubin Allen and Darryl Barnes. (Dkts. 30-1, 31-1). Additionally, Plaintiffs present some evidence of an informal policy at the Sebring and Tampa facilities of encouraging technicians to work more than forty hours per week but to report only forty hours.

On the other hand, MasTec has submitted the declarations of five current technicians at the Tampa facility who indicate they do not wish to participate in this lawsuit. *See* Dkts. 43-1, 43-2, 43-3, 43-4, 43-5). These technicians state that they received instruction on MasTec's policies regarding accurate reporting of hours worked, they periodically (in some cases) or often (in others) or almost always (in others) worked overtime hours, and they were correctly paid for all hours worked. *Id.*

As to facilities other than the Sebring and Tampa facilities, Plaintiffs' allegations and evidence of technicians interested in joining this lawsuit are plainly insufficient. As to the Orlando facility, Plaintiffs identify one technician, Abel Nunez, who wishes to opt in. However, Nunez's claims are evidently subject to mandatory arbitration.[17] Thus, he is not similarly situated to Delano or Bancroft. Otherwise, Plaintiffs have submitted consents of (1) two technicians who worked out of MasTec facilities in Georgia and North Carolina (Steven Walker and Sire Rasce E. Brown), which obviously do not indicate the existence of Florida technicians who wish to join this lawsuit, and (2) technicians (Jamie Evett, Scott Ferguson, and Anthony Betschner) whose place of employment is

---

[16] Garcia apparently worked out of the Sebring facility. *See* Dkt. 78 at 2. *But see* Dkt. 40 at 8 (stating in oral argument that Garcia worked out of the Tampa facility).

[17] Defendants present uncontroverted evidence that Nunez signed an employee acknowledgment (Dkt. 53-2) stating that he (i) understood MasTec's Dispute Resolution Policy ("DRP"), which contains a provision for mandatory arbitration of employment-related disputes, (ii) agreed to review the DRP immediately, and (iii) acknowledged that he would be bound by the DRP if he did not affirmatively opt out by returning a signed form to MasTec's legal department within 30 days. Plaintiffs do not dispute that Nunez failed to timely opt out of the DRP. Indeed, it appears that Nunez through counsel sent MasTec an arbitration demand in March, 2010. *See* Dkt. 53-4 at 4.

not ascertainable[18] and whose claims are, like Nunez's, evidently subject to mandatory arbitration.[19]

Even as to the Sebring and Tampa facilities, Plaintiffs have not presented sufficient evidence that there are other technicians who desire to opt in to this action. During the fifteen months that this lawsuit has been pending, Plaintiffs have been able to identify only three technicians at the Sebring and Tampa facilities who desire to join or who have expressed an interest in joining this action. Plaintiffs' unsupported beliefs and expectations that others may desire to opt in are insufficient to justify certification of a collective action and notice to a potential class. *See Mackenzie*, 276 F.Supp.2d at 1220 (certification and notice are not appropriate to determine whether others desire to opt in).[20]

Plaintiffs essentially ask the Court to infer the existence of other technicians who wish to opt in to this lawsuit from their allegations and evidence of an informal policy at the Sebring and Tampa facilities of encouraging technicians to under-report their hours worked. However, in this Circuit, an affirmative showing that other employees wish to join this lawsuit is a separate requirement for conditional certification. As Plaintiffs have been able to identify only three potential opt-ins not

---

[18] Defendants appear to suggest (Dkt. 78 at 1-2) that these opt-ins were not employed at the Sebring facility. However, the Court will not speculate as to which other facility employed them.

[19] Defendants present uncontroverted evidence that Walker, Brown, Evett, Ferguson, and Betschner signed employee acknowledgments (Dkt. 78-1) stating that they (i) understood the DRP (ii) agreed to review the DRP immediately, and (iii) acknowledged that they would be bound by the DRP if they did not affirmatively opt out by returning a signed form to MasTec's legal department within 30 days. Plaintiffs do not dispute that Walker, Brown, Evett, Ferguson, and Betschner failed to timely opt out of the DRP.

[20] *See also Wombles v. Title Max of Ala., Inc.*, No. Civ.A. 303CV1158CWO, 2005 WL 3312670, at *3 (M.D. Ala. Dec.7, 2005) (two consents to join and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in); *Slaughter v. CVS Rx Servs., Inc.*, No. CV03-CO-01403-S, slip op. at 12-13 (N.D. Ala. Nov. 1, 2004) (thirteen plaintiffs and one affidavit by an employee who desired to join was insufficient); *Mooney v. Advanced Disposal Servs.*, No. 3:07-CV-1018-WKW, 2008 WL 3843550, at *3 (M.D. Ala. Aug. 14, 2008) ("[T]he court views the identification of only four plaintiffs-be they all named as such or potential opt-in plaintiffs-as a weak indicator that other employees desire to opt-in under the circumstances.")

subject to mandatory arbitration in fifteen months and after substantial discovery (including depositions), the Court finds that Plaintiffs have not demonstrated a reasonable basis for crediting their assertions that other aggrieved employees exist who wish to opt-in to this action.

### *Conclusion*

For the foregoing reasons, Plaintiffs' Motion to Allow Notice to Be Sent to Potential Plaintiffs Informing Them of Their Right to Opt-In to This Case (Dkt. 13) is **DENIED**.

**DONE AND ORDERED** in chambers this 1st day of June, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record